**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 24-20074-CR-WILLIAMS**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EZEQUIEL MARTINEZ,

    Defendant.
_____/

## ORDER

**THIS MATTER** is before the Court on Defendant Ezequiel Martinez's ("*Martinez*") Motion for Judgment of Acquittal (DE 91) ("*Motion*"). The Government filed a Response in Opposition to the Motion (DE 95), and Martinez filed a Reply (DE 102). For the reasons set forth at the hearing on February 6, 2025, and more fully articulated below, the Court granted Martinez's Motion for Judgment of Acquittal (DE 107).

### I. BACKGROUND

On February 29, 2024, Martinez was indicted on the sole count of transmitting a threat in interstate commerce, pursuant to 18 U.S.C. § 875(c), after uploading to his private Instagram account a thirty-eight-second recording of him inside his vehicle, pointing a sight-equipped firearm in the direction of a police vehicle driving ahead of him (the "*Video*" or the "*Post*"). (DE 1; Gov. Ex. 1.) In the Video, dated November 20, 2023, then twenty-one-year-old Martinez is heard saying "I'm on yo ass like white rice my boy,"[1] saying, "red dot, red dot," and laughing. (Gov. Ex. 1.) Unbeknownst to Martinez, Miami-

---

[1] In fact, the driver of the police vehicle was female School Board Office Yovney Perez ("*Perez*").

Dade Police Department Detective Danilo Fuentes ("***Fuentes***") had created a profile impersonating a young woman, in order to gain access to Martinez's private account as a follower. Though the "Instagram story" automatically became unavailable after twenty-four hours, Fuentes saw the Video.

Fuentes had been monitoring Martinez's account for some time and knew Martinez's identity, the type of car he drove, and his address. Fuentes called to check on Perez, who he ascertained was driving the police vehicle in the Video. Perez was unaware of Martinez until alerted by Fuentes. Although Fuentes testified to engaging in periodic surveillance of Martinez's home, no notes were taken during these surveillance activities, no department-wide alerts regarding Martinez were issued, and Martinez was not arrested until two months after posting the Video. Martinez's posting of the Video was charged as a true threat to police officers, generally. (DE 1.)

At trial, the jury was shown the Video as well as a few dozen of Martinez's Instagram posts from the months immediately prior to the Video. The posts included photos and videos showing Martinez holding firearms or pointing firearms at the camera, off a high-rise apartment balcony or towards a dog. (DE 88-31–71.) Many were captioned with generalized violent language like "let's go to war," "eye for an eye," and "Who left 'em dead inside the neighborhood? It was I." (*Id*.) ATF Special Agent Martin Amaran ("***Amaran***") opined that the firearm in the Video was real and that the posts support the idea that the violence of the rhetoric was escalating. Miami-Dade Police Department Detective Angel Delgado ("***Delgado***") testified that certain red clothing and hand signs exhibited by Martinez in prior posts are gang affiliated. The jury also heard from Perez,

who testified to feeling fearful upon being shown the Video after the fact. However, none of the posts identified Perez or mentioned the police in any way.

The defense called an investigator, Luis Fernandez, who testified that many of the captions included in Martinez's posts were song lyrics of popular rap artists. Additionally, Martin Flores ("**Flores**") testified as an expert to the diffusion of gang culture into rap and popular culture, especially among young men of all demographics across the country.

On November 20, 2024, after a three-day jury trial, Martinez was convicted of the one count. (DE 83.) Martinez timely moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a) after the close of the Government's evidence and at the end of the trial, and the Court reserved ruling. Martinez timely filed his post-verdict Motion for Judgment of Acquittal on December 4, 2024.[2] (DE 91.) On December 20, 2024, the Court entered a Judgment of Conviction and sentenced Martinez to time served and three years of supervised release. (DE 101.) Then on February 7, 2025, following a Motion Hearing at which the Court discussed its view of the Motion's merits with the Parties, the Court granted Martinez's Motion. (DE 107.) This Order follows.

## II.    LEGAL STANDARD

The Court's role when considering a post-verdict Rule 29 motion for judgment of acquittal is to "ascertain whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Ward,* 197 F.3d 1076, 1079 (11th Cir. 1999). The Court must "view the evidence in the light most favorable" to the verdict, and "accept all of the jury's 'reasonable inferences and credibility determinations.'" *Id.* (quoting

---

[2] Rule 29(c)(1) allows a defendant to "move for judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later."

*United States v. Sanchez*, 722 F.2d 1501, 1505 (11th Cir. 1984)). However, to be reasonable, inferences must not be "mere speculation," "conjecture," or "guesswork." *United States v. Villegas*, 911 F.2d 623, 628 (11th Cir. 1990) (internal quotations omitted).

## III. DISCUSSION

Martinez's conviction under § 875(c) required proof beyond a reasonable doubt that he 1) knowingly sent a message in interstate commerce containing a true threat to injure police officers, and 2) sent the message with either intent to communicate a true threat or with knowledge that it would be viewed as a true threat. Pattern Crim. Jury Instr. 11th Cir. OI O30.3 (2024). *See also* (DE 1) (indictment). That Martinez had posted the Video and that it had moved in interstate commerce were not at issue. (DE 88-8) (interstate commerce stipulation). But whether Martinez's Post constituted a true threat, and whether he possessed the requisite knowledge or intent, were both highly contested issues. For the reasons discussed below, the Court finds the Government introduced sufficient evidence that Martinez's Video could be seen as objectively threatening. However, based on only Martinez's Video and prior, unrelated posts, a reasonable jury could not have found beyond a reasonable doubt that Martinez intended to communicate or knew he was communicating a serious, true threat to police officers.

**(A) A reasonable jury could have concluded that the Video objectively communicated a serious threat, despite its 1) not containing an explicit threat; 2) not being directed towards any specific target; and 3) only being posted to Martinez's private social media account.**

True threats "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *United States v. Fleury*, 20 F.4th 1353, 1365 (11th Cir. 2021) (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). The speaker "does

not have to actually intend to carry out the threat" because "a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." *Id.* (quoting *Black*, 538 U.S. at 360). A true threat is "a serious threat—not idle talk, a careless remark, or something said jokingly—that is made under circumstances that would place a reasonable person in fear" of them or another being injured. Pattern Crim. Jury Instr. 11th Cir. OI O30.3 (2024). *See also Elonis v. United States*, 575 U.S. 723, 751 (2015) (Thomas, J., dissenting) ("There is thus no dispute that, at a minimum, § 875(c) requires an objective showing: The communication must be one that a reasonable observer would construe as a true threat to another.") (internal quotations omitted). Distinguishing a true threat from protected speech is a "fact-intensive inquiry, in which the language, the context in which the statements are made, as well as the recipients' responses are all relevant." *United States v. Wheeler,* 776 F.3d 736, 743 (10th Cir. 2015) (internal quotations omitted).

The Government argues that a reasonable jury could have concluded that the Video was a true threat based on its contents and Martinez's preceding posts involving firearms displays and aggressive captions. (DE 95 at 7–11.) The Government also points to the testimony from involved officers stating that they took the Post seriously, as tending to prove that the Post was objectively threatening. (*Id.* at 10–11.)

The Government is correct that the display of a real firearm increased the seriousness and threatening nature of Martinez's communication. *See United States v. Hagar*, 822 F. App'x 361, 371 (6th Cir. 2020) (holding it was not abuse of discretion to admit evidence of the defendant's firearms possession because it was "direct evidence

that his threats to shoot his victims were true threats to injure and not merely idle talk") (internal citations omitted). A reasonable jury was also entitled to view Martinez's other photos posing with firearms and including violent captions as contributing to a perception of intimidation.

However, several other aspects of the charged conduct and surrounding context cast the Video as the product of impulsive, irresponsible, exceedingly immature behavior, rather than a serious, contemplated threat to harm police officers. Notably, Martinez never articulated a threat or plan to harm officers in any of his previous posts. In the Video, Martinez pointed his firearm's laser sight towards the police vehicle, said, "red dot, red dot," and laughed. Consequently, the posting of the Video several hours later, without any caption, was, at most, an implicit threat against law enforcement. This is in stark contrast to the explicit threats more commonly charged as true threats. *See, e.g., United States v. Curtin*, 78 F.4th 1299, 1304–05 (11th Cir. 2023) (including in a filing to Magistrate Judge Maynard the statement, among other violent language, "I am threatening Maynard with death and bodily harm"); *United States v. Dierks*, 978 F.3d 585, 588–89 (8th Cir. 2020) (sending tweets at Senator Joni Enrst's twitter account threatening, among other things, "I'll beat ur ass in front of ur window I promise that"); *United States v. Howard*, 947 F.3d 936, 940 (6th Cir. 2020) (leaving a voicemail for Eric Holder saying, in part, "I'm going to kill you . . . former U.S. Attorney General Eric Holder, I am going to murder you"); *United States v. Haddad*, 652 F. App'x 460, 462 (7th Cir. 2016) (sending packages with suspicious powders to elected officials and corporate executives with accompanying letters containing language such as, "[w]e, the people are going to stand up to you and fucking kill you," and "[w]e will so happily and without mercy kill your families").

Next, Martinez did not knowingly send the Video to anyone who would understand themselves to be a target. In fact, Martinez's Post automatically disappeared on his private account after twenty-four hours. While a true threat can be made to one other than the target, it is axiomatic that a threat made directly to the target or in a way likely to reach them demonstrates clear intent to intimidate. *See United States v. Hayner,* 371 F. Supp. 3d 700, 706–07 (N.D. Cal. 2018) ("As an evidentiary matter, the fact that a defendant did not directly communicate with the object of the threat may, depending on the circumstances, make it less likely that he intended the statement to be taken seriously."); *United States v. Fenton*, 30 F. Supp. 2d 520, 524–27 (W.D. Penn. 1998) (holding that the defendant's statement to an insurance representative that he was going to "shoot Congressman Murtha's head off" was not a true threat because "there was simply no connection between . . . the recipient of the communication[] and . . . its intended object"). Here, the evidence showed Martinez posted the Video only on his private Instagram account[3] for a small group of followers; there was no reason he would have been aware that any police officers were among that group. *Cf. United States v. Khan*, 937 F.3d 1042, 1048, 1051 (7th Cir. 2019) (rejecting the defendant's argument that his Facebook posts were not serious threats but akin to entries in his private diary, because the defendant had "set his Facebook privacy settings to 'public,' [so] anyone with access to Facebook . . . could view his comments and photos").

Moreover, the lack of evidence of alarmed or fearful reactions to Martinez's Video

---

[3] Martinez's Instagram account moniker is 187shotta, which Delgado testified is a reference to a murder statute. Like Martinez's other prior posts, this generic violent reference may have added to the Video's menacing character. But, like those posts, the account name does not evince any intent to harm police. *See infra* n.4 (contrasting Martinez's unrelated prior posts with the communications in other cases, which were of a piece with the defendants' charged threats).

by his followers, or any indication that his viewers were incited to violent action, undermines the notion that Martinez's Post was a true threat. *See United States v. Wheeler*, 776 F.3d 736, 743 (10th Cir. 2015) (describing "recipients' responses" to a communication as relevant to a true threat determination); *United States v. Baker*, 514 F. Supp. 3d 1369, 1380 (N.D. Fla. 2021) ("In assessing whether a communication entails a true threat, courts also take into consideration the reaction of recipients of the alleged threat.") (citing *Watts v. United States*, 394 U.S. 705, 708 (1969)). The Government presented no evidence that anyone commented on the Video or any of Martinez's prior posts to establish that the posts were engendering either fear or urgency to do violence. Nor did anyone alert Martinez or law enforcement directly.

Likewise, despite police knowing Martinez's identity and whereabouts, officers did not document any surveillance of Martinez after the Post, did not disseminate a general alert to the law enforcement community, and did not arrest Martinez until two months after he posted the Video. This inactivity suggests police officers did not interpret Martinez's Video as communicating an imminent and true intent to harm officers. *Cf. United States v. Hoffman*, 806 F.2d 703, 704, 712 (7th Cir. 1986) (the Secret Service immediately initiating a forensic analysis to identify the sender of a letter threatening the president and arresting the defendant within eleven days was "clear evidence" that the letter included a true threat); *Baker*, 514 F. Supp. 3d at 1380–81 (that the "FBI sought a warrant to arrest the [d]efendant the same day that he transmitted [the threatening communications] . . . suggests that the FBI perceived the [d]efendant's messages to constitute real threats of violence").

Ultimately, however, despite the Court's reservations, the Court cannot say that no

reasonable jury could have viewed Martinez's seeming fascination with firearms and his use of violent captions, together with the Video, as objectively threatening. However, the Government relied on this same evidence—exclusively—to also prove beyond a reasonable doubt that Martinez subjectively knew the Video would be taken as a true threat or intended to convey a true threat to police officers. This reliance is insufficient to fulfill the Government's burden of proof.

**(B) No reasonable jury could have concluded that Martinez intended or knew that his Post was a true threat to police, given that Martinez communicated, at worst, an implicit threat to a private following, and the Government did not introduce any additional evidence of Martinez's mental state.**

To prove the intent element in § 875(c), the Government was required to introduce sufficient evidence that Martinez subjectively intended that his Post be viewed as a true threat, or at least knew it would be. *Elonis v. United States*, 575 U.S. 723, 740 (2015) (holding "the mental state requirement in § 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat"); *United States v. White*, 810 F.3d 212, 220–21 (4th Cir. 2016) (describing the "subjective intent" standard in § 875(c) as established in *Elonis*).[4] As with any proof, the Government may rely on direct or circumstantial

---

[4] In *Counterman v. Colorado*, the Supreme Court held that to conform with First Amendment speech protections, a true threat statute must require, at least, a mens rea of recklessness. 600 U.S. 66, 82 (2023). That is, a defendant must "consciously disregard a substantial and unjustifiable risk that the conduct will cause harm to another." *Id.* at 79 (cleaned up). Because "*Elonis* decided the requirements for liability under 875(c) as a matter of statutory interpretation, [so] did not reach the defendant's First Amendment challenge," *Counterman* does not overrule *Elonis* or alter Eleventh Circuit precedent establishing a mens rea of intent or knowledge under 875(c). *United States v. Fleury*, 20 F.4th 1353, 1371 (11th Cir. 2021); *Elonis,* 575 U.S. at 740 ("Given our disposition, it is not necessary to consider any First Amendment Issues."). In any event, the distinction is irrelevant to the outcome of this case because the Government's proof would be deficient

evidence. *United States v. Curtin*, 78 F.4th 1299, 1306 (11th Cir. 2023).

A review of cases under § 875(c) and other statutes requiring a similar subjective intent reveals two broad categories of proof supporting knowledge or intent. In some circumstances, a defendant's communication is so "violent, explicit, and resolute" that the communication, or series of communications, is strong evidence of one's intent or knowledge. *United States v. Khan*, 937 F.3d 1042, 1055 (7th Cir. 2019). In other words, some threats are so unmistakable that the issuer must have either intended to threaten or known a reasonable person would interpret their words as a serious threat. *See, e.g.*, *Curtin*, 78 F.4th at 1304–05 (concluding "the strongest items of evidence illustrating [the defendant's] state of mind are his own words," after the defendant included in a filing to Magistrate Judge Maynard the statement, "I am threatening Maynard with death and bodily harm"); *United States v. Dierks*, 978 F.3d 585, 588–89 (8th Cir. 2020) (sending tweets at Senator Joni Enrst's twitter account threatening, among other things, "I'll beat ur ass in front of ur window I promise that"); *United States v. Howard*, 947 F.3d 936, 940 (6th Cir. 2020) (leaving a voicemail for former Eric Holder saying, in part, "I'm going to kill you . . . former U.S. Attorney General Eric Holder, I am going to murder you"); *United States v. Haddad*, 652 F. App'x 460, 462 (7th Cir. 2016) (sending packages with suspicious powders to elected officials and corporate executives with accompanying letters containing threats such as, "[w]e, the people are going to stand up to you and fucking kill you," and "[w]e will so happily and without mercy kill your families"); *United States v. Nissen*, 432 F. Supp. 3d 1298, 1323 (D.N.M. 2020) (The defendant's "statement that the 'next time [an NM State Police Officer pulls him over] I'm gonna take my revolver

---

under a recklessness standard as well.

and put that mother fucker drop dead,' . . . along with his palpable agitation and aggression . . . support the jury's finding that he intended to communicate a threat.") (alterations in the original).

Other evidence, such as an admission, may also prove a defendant's mental state when communicating a threat. *See, e.g.*, *United States v. Oliver,* 19 F.4th 512, 518 (1st Cir. 2021) (explaining that "the evidence regarding the defendant's mental state consist[ed] of both the letter's text and his extrinsic commentary," including his insistence to law enforcement that the recipient of the threatening letter "should be worried and concerned for her safety"); *Dierks*, 978 F.3d at 589–90 (rejecting the defendant's argument that intent to threaten was not proven, in part, because the defendant "admitted that his tweets could be interpreted as threatening"); *United States v. Ivers*, 967 F.3d 709, 714, 718–19 (8th Cir. 2020) (affirming conviction for threatening a judge, despite the statement being somewhat ambiguous and being made to the defendant's attorneys, in part, because the defendant claimed to be glad that his statements were being taken seriously); *United States v. Stoner*, 781 F. App'x 81, 86 (3d Cir. 2019) (defendant's stated awareness that his attorney would disapprove of his threatening statement was evidence of his mental state). Similarly, expert testimony based on a psychological evaluation that the defendant "intended to cause his victims anger, grief, and fear," may prove subjective intent. *United States v. Fleury*, 20 F.4th 1353, 1367 (11th Cir. 2021).

Knowledge may also be proven through evidence of notice, such as when a defendant makes threatening statements after being served a restraining order or being warned that similar previous statements have been taken seriously or may be grounds for prosecution. *See, e.g., Curtin*, 78 F.4th at 1304 (upholding conviction under § 875(c)

when the defendant made threatening statements to a magistrate judge after previously being prosecuted for making similar statements to a state court judge); *Dierks*, 978 F.3d at 590 (finding intent had been proven, in part, because the defendant's threatening statements were made after a police officer warned him that continued statements could lead to criminal charges); *Ivers*, 967 F.3d at 719–20 (prior warning by law enforcement regarding earlier similar statements was evidence of intent); *Stoner*, 781 F. App'x at 86 (the defendant's "arrest for terroristic threats placed [the defendant] on notice that others viewed his conduct as threatening, and thus he had knowledge that the communication . . . would be viewed as a threat") (internal quotations omitted); *United States v. Elonis*, 841 F.3d 589, 598–600 (3d Cir. 2016) (failure to instruct the jury on the knowledge or intent requirement was harmless because there was proof beyond a reasonable doubt that the defendant at least knew his statements, couched as rap lyrics, were threatening, after being told by coworkers and served a restraining order by his wife).

The Government contends that Martinez's case falls into the first category—they claim that the Video, in the context of his prior posts, was such an obvious true threat that the communication alone proves Martinez's subjective intent.[5] (DE 95 at 12) ("Here, the

---

[5] The Government likens Martinez's pre-November 20th posts to the defendant's escalating "series of phone calls and messages to [a victim]" in *Mabie* and the "increasingly aggressive promises" to engage in mass murder in *Khan*. (DE 95 at 9) (quoting *United States v. Mabie*, 663 F.3d 322, 331 (8th Cir. 2011), and *United States v. Khan*, 937 F.3d 1042, 1052 (7th Cir. 2019)). But Martinez's posts do not resemble those in the Government's cases and hardly support an inference of knowledge or intent. In *Mabie*, after becoming angry at his former boss, the defendant began threatening the boss and the boss's family and friends through a series of letters and telephone calls. 663 F.3d at 326–27. Among many other threats, this included three calls to his boss's friend, in which he referred to the friend hanging himself, referenced his dead relative's birthday, and threatened to come to his home. *Id.* Each of the defendant's communications was part of a plan to terrorize the boss and his loved ones. Similarly, the public-facing messages in *Khan* were "increasingly aggressive promises to murder at least six specified target groups in a defined area in Chicago," before a specific deadline, in retaliation for

same evidence showing that the communication was a true threat also tends to show that the Defendant at least knew it to be one but also intended to communicate the threat."). But as explained, *supra* Section III.A., this evidence was only just sufficient to allow a reasonable jury to conclude the Video was objectively threatening. And given the multiple factors that would indicate otherwise—the lack of an explicit threat, the use of a private Instagram account, and the absence of any external feedback that his posts were either problematic or inciteful—Martinez's posts alone were not unmistakably threatening such that they proved his subjective intent.[6]

The Government did not introduce any evidence within the second category from which a reasonable jury could conclude Martinez had the requisite knowledge or intent. The Government introduced no direct evidence of Martinez's mental state, such as an admission of knowledge or intent, psychological expert testimony, or testimony of a friend or relative with knowledge of Martinez's thinking. Likewise, the Government admitted no other circumstantial evidence probative of knowledge or intent. At no time, for instance,

---

various perceived wrongs. 937 F.3d at 1047, 1052 (internal quotations omitted). In contrast, Martinez's prior posts were not sent to any victim, were posted to his private Instagram account, and were wholly unrelated to police. Therefore, they lend little credence to the idea that Martinez intended to threaten police or knew his Video would be perceived as the culminating threat in a series of escalating posts.

[6] The Government also points to postings by Martinez, in which he wore red clothing, referenced "bloods," or displayed signs that Delgado testified are gang affiliated. (Gov Exs. 41–43.) However, the Government presented no evidence that the Video itself was a requirement of gang membership or was in furtherance of any particular gang activity. In the absence of this evidence, the conclusion that Martinez intended his posts as a gang-related reprisal to police is simply too speculative to credit. *See United States v. Valerio*, 48 F.3d 58, 64–65 (1st Cir. 1995) (when the government presented only evidence of cocaine hidden in several locations within defendant's short-term residence, it was unreasonably speculative for a jury to infer both that the defendant was aware of all of the hidden cocaine and that the quantity proved the cocaine was not for personal use).

had Martinez been warned by police, his followers, an attorney, or anyone else to tone down or remove his posts. He had not been previously convicted, arrested, or served a restraining order based on any threatening activity. And there was no evidence that Martinez had any prior relationship with or animus towards any specific police officer or police department from which an intent to threaten could be inferred. If anything, evidence that Martinez's posts' captions included song lyrics from well-known rap songs and Flores's expert testimony discussing the popularization among youth culture of gang symbols would suggest that Martinez may have viewed his own posts as creative expressions rather than serious threats.

Consequently, the jury was left to "stack inference upon inference" to guess at Martinez's mental state. *Valerio*, 48 F.3d at 64. This degree of guesswork and unsupported speculation cannot sustain proof of guilt beyond a reasonable doubt.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Martinez's Motion for Judgment of Acquittal (DE 91) is **GRANTED**.
2. Martinez's Judgment of Conviction and Sentence (DE 101) are **VACATED**.
3. A Judgment of Acquittal is **ENTERED** as to Count 1 of the Indictment (DE 1).

**DONE AND ORDERED** in Chambers in Miami, Florida, on this 28th day of February, 2025.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE